```
                     UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA

CENAC MARINE SERVICES, LLC                         CIVIL ACTION

V.                                                 NO.   16-15029
                                                   C/W 16-15256*
                                                   *applies to
                                                   16-15256


JASON CLARK                                        SECTION "F"
```

ORDER AND REASONS

Before the Court are Cenac Marine Services' two motions: (1) motion for summary judgment on the plaintiff's maintenance and cure and related punitive damages claims and (2) motion for leave to file a counterclaim. For the following reasons, both motions are GRANTED.

**Background**

This is a consolidated case stemming from an injury to a seaman.

On June 5, 2015, Jason Clark applied for a position as a tankerman with Cenac Marine Services, LLC. As part of the application, Clark underwent a pre-employment physical at Houma Family Practice, where he answered sixteen questions posed in the physical form and fifty-two questions posed in a medical history form. Clark signed the questionnaires and certified that the information on the forms was correct and truthful. The only medical history Clark indicated during this physical, both to the screening

1

doctor and on the questionnaires, was a prior hernia with repair. He certified he had no prior back injuries or back pain.

On June 30, 2016, Clark completed a Cenac accident report form. He indicated that he injured his back the day before, June 29, 2016, when he was moving a cross-over hose without the help of his deckhand. The accident report form asked whether the employee submitting the form had ever hurt the area of the body allegedly injured in the report, meaning his back. Clark answered "no" to this question, again certifying that he had never injured his back before the June 29, 2016 accident.

After Cenac deposed Clark and in the course of discovery following the filing of Clark's lawsuit, Cenac obtained medical records from Dyess Medical Center relating to its years-long treatment of Clark. From these records Cenac learned that Clark initially sought treatment from Dr. James Dyess after he was in a vehicle accident that occurred in May 2011. Clark's first appointment with Dr. Dyess was on August 25, 2011; Clark reported he experienced low back pain and left shoulder pain since the May 2011 accident. The record indicates that Dr. Dyess treated Clark from August 25, 2011 until April 28, 2016; Clark attended fifty-two medical appointments during the four and a half year period. Over this time Clark continuously complained of neck and back pain. He received prescriptions for Soma, Norco, Ambien, and Percocet.

Notably in this case's timeline of events, Clark visited Dr. Dyess on May 19, 2015; less than a month before applying for a job with Cenac and answering medically-related questions on June 5, 2015. At this May 19 visit, Clark reported no change in his neck, lower back and hamstring pain; he also reported anxiety, and insomnia. Dr. Dyess renewed his prescriptions for Soma, Norco, Ambien, and Percocet. But only three weeks later, Clark represented to Cenac and the pre-employment physician that he had no previous neck or back pain and was not under the care of a treating physician. Clark continued to visit the Dyess Medical Center for treatment after his employment with Cenac began. On April 28, 2016 Clark had his last visit with Dr. Dyess after Dr. Dyess informed Clark that he was releasing him from treatment and advised Clark to see a pain management specialist.

Nearly two months after his last appointment with Dyess Medical Center, Clark reported his work-related accident to Cenac and completed the incident report form. In response, Clark was taken to Houma Family Practice, where he also completed his pre-employment exam, and was treated by Dr. Mark Walker. Initially he was cleared for light duty work and then cleared for duty without restrictions on July 12, 2016. He purportedly failed to communicate and report to Cenac for his assigned hitch. On July 13, 2016, Cenac terminated Clark's employment for his failure to communicate and

3

report for work, poor performance evaluations, and various violations of Cenac's safety rules during his employment.

In the weeks after his termination, Clark retained counsel, who arranged for Clark to see Dr. Michael Chambers on September 7, 2016. Clark told Dr. Chambers he hurt himself while working on Cenac's vessel and that he did not feel he needed emergency medical attention at the time of the accident. However, he reported that he was now experiencing pain and discomfort, mainly in his back. At this appointment he also informed Dr. Chambers that he had a history of lower back pain. Dr. Chambers found tenderness in both the thoracic and lumbar areas of Clark's spine; Dr. Chambers prescribed medication, ordered an MRI, and advised Clark not to work. In response, Cenac arranged for Clark to visit Dr. Walker again on September 19, 2016; at this time he informed Dr. Walker for the first time of his history of back pain. Dr. Walker ordered an MRI immediately. The next day Dr. Walker called Cenac and told Cenac he believed Clark needed emergency medical attention for a spinal bone infection, called osteomyelitis at the T9-10 level. The MRI also revealed an annular disc bulge and disc desiccation at L3-4 and L4-5 and a disc bulge at L5-S-1; these issues were also present in a 2013 MRI taken in the course of treatment at Dyess Medical Center.

Cenac agreed to pay maintenance and cure to avoid punitive damages, but informed Clark's counsel that it was doing so "under

4

protest" with a full reservation of all rights to seek reimbursement. Cenac's counsel then learned from Dr. Walker that within a reasonable degree of medical certainty, the osteomyelitis was not occupationally or trauma related; Dr. Walker reiterated this medical opinion in depositions taken in the course of this litigation.

Clark received treatment from different specialists for his infection. And, on November 4, 2016, Clark's infectious disease specialist determined that Clark achieved maximum medical improvement regarding his spinal infection. Dr. Walker determined that Clark had reached maximum medical improvement from an occupational physician stand point after conducting a repeat MRI on November 28, 2016.

Cenac was first to file suit, seeking a declaratory judgment that Cenac is not obligated to pay Clark maintenance and cure benefits. Clark then filed a lawsuit against Cenac, alleging Jones Act and unseaworthiness claims, as well as claims for maintenance and cure and punitive damages for failure to pay maintenance and cure. Cenac now moves the Court to grant summary judgment in its favor on Clark's maintenance and cure and related punitive damages claims. Additionally, Cenac moves for leave to file a counterclaim against Clark for an offset from any recovery he may be awarded for maintenance and cure payments it made to Clark. The Court first

determines whether summary judgment on the maintenance and cure claims under the McCorpen defense is appropriate.

>        I.   Motion for Partial Summary Judgment

>            *A. Summary Judgment Standard*

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d

646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claim. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

*B. Maintenance and Cure*

"Maintenance and cure is a contractual form of compensation given by general maritime law to a seaman who falls ill while in the service of his vessel." McCorpen v. Central Gulf S.S. Corp., 396 F.2d 547, 548 (5th Cir. 1968). It may be awarded "even where the seaman has suffered from an illness pre-existing his employment." Id. Notwithstanding this general principle, a court will deny maintenance and cure when a seaman "knowingly or fraudulently conceals his illness from the shipowner." Id. Specifically,

> where the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure. Of course, the defense that a seaman knowingly concealed material medical information will not prevail unless there is a causal link between

7

> the pre-existing disability that was concealed and the disability incurred during the voyage.

Id. at 549 (citations omitted). Accordingly, to determine whether Clark forfeited his rights to maintenance and cure, the Court considers whether: (1) he intentionally misrepresented or concealed medical facts; (2) the nondisclosed facts were material to Cenac's decision to hire him; and (3) there is a causal link between the withheld information and his injury complaint. Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 171 (5th Cir. 2005).

### *i. Concealment*

First, Cenac argues that Clark intentionally misrepresented or concealed medical facts when he denied having prior back and neck pain on two medical questionnaires filled out in the course of his job application. In support, Cenac proffers Clark's answers on the medical questionnaire forms and Clark's deposition testimony that the answers supplied were incorrect and inaccurate. The plaintiff argues that there is a factual issue of his intent to conceal his prior medical condition. He contends that the questions were in "very small typeface" and that he "answered almost all of the questions in the negative, in a rush to get on board and cleared in what he thought was just a pro-forma step necessary to the [hiring] process." Further, in his deposition, Clark admitted that he did not read all of the questions. He stated

he looked for any questions regarding any prior hernia surgery, answered that one in the affirmative, and responded to the remaining questions in the negative without reading each one; this was his admitted usual practice in filling out medical questions and paperwork.

The intentional concealment prong of the McCorpen test is an objective inquiry. Brown, 410 F.3d at 174. No genuine issue of material fact exists where a plaintiff conceals his prior injury, even if he denies having intentionally withheld the information. See id.; Bud's Boat Rental, Inc. v. Wiggins, No. 91-2317, 1992 WL 211453, *2 (E.D. La. Aug. 24, 1992).

> [A] seaman may be denied maintenance and cure for failure to disclose a medical condition only if he has been asked to reveal it. Failure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information therefore satisfies the intentional concealment requirement.

Brown, 410 F.3d at 174 (quoting Vitcovich v. Ocean Rover O.N., No. 94-35047, 1997 WL 21205, *3 (9th Cir. Jan. 14, 1997)). Here, Clark had two objective medical questionnaires to complete, and he executed each one after responding in the negative to inquiries regarding existing and prior back and neck pain. The questionnaires included language that unequivocally conveyed to Clark that his responses must be truthful to the best of his knowledge. He certified that the information provided was truthful by signing a statement that read: The undersigned hereby certify that all the

9

information I have furnished on this form is correct and that I have been truthful in my responses.

Under this Circuit's application of the McCorpen defense, the plaintiff objectively and intentionally concealed parts of his medical history. The plaintiff admitted in his deposition that he did not read all of the questions on the medical questionnaire, yet he still certified that the information was true. He further failed to reveal his years-long treatment for back and neck pain related to a 2011 injury on the medical forms and in his examination with Dr. Walker. Therefore, the plaintiff went beyond failing to read the questions; he also denied specific questions that implicated his treatment for back injuries and medications prescribed in relation to the injuries. And with apparent hypocrisy seeks to also blame small print. The Court finds no doubt in whether Clark's concealment was intentional; no genuine issue of material fact exists as to his intentional concealment.

*ii. Material to Hiring Decision*

Second, Cenac argues that the nondisclosed medical facts were material. In support of this proposition, Cenac cites uncontroverted depositions of its Human Resources Personnel Manager, Andrew Soudelier, and its examining physician, Dr. Walker. Dr. Walker testified that it would be important to know about prior injuries, including whether the patient experienced a decreased lumbar thoracic range of motion associated with pain and

10

whether the patient was seeking active treatment at the time of the pre-employment physical. Mr. Soudelier attested that Cenac falsely assumed Clark was fit for duty when Cenac hired him because Cenac had no knowledge of Clark's medical history of neck and back pain. Importantly, Mr. Soudelier testified that had Cenac been aware of Clark's active treatment for pre-existing back and neck pain, including the narcotics prescriptions, Cenac would not have placed Clark on its vessel as a tankerman.[1]

This Circuit has established that if the non-disclosed facts would have either prevented the vessel owner from hiring the plaintiff, or at least delayed the hiring, the non-disclosed facts are material. Jauch v. Nautical Servs. Inc., 470 F.3d 207, 212-13 (5th Cir. 2006); Russell v. Seacor Marine, Inc., No. 00-339, 2000 WL 1514712, *3 (E.D. La. Oct. 10, 2000); In Re L.S.K. Towing, Inc., No. 94-4134, 1995 WL 350039, at *2 (E.D. La. June 6, 1995). Because common sense teaches Clark's concealed medical information could have materially impacted Cenac's hiring decision, the Court finds it to be material.[2] See id.

---

[1] The plaintiff impliedly responds that his concealment was not material to Cenac's hiring decision. Clark argues that Cenac operates on a "good old boy" mentality and that he would call "Pinky" to testify that "you ain't getting on if you don't know somebody." Clark contends that he "knew somebody," which was material to its hiring decision, not his medical condition.
[2] "Good old boy" network notwithstanding.

11

### *iii. Causal Link*

Finally, Cenac correctly argues that there is a causal link between the withheld information and Clark's injury complaint. The Fifth Circuit's Brown decision highlights the difference between the McCorpen "connection" analysis and standard causation analysis. In Brown, the plaintiff argued there was no medical proof that his new injury was an aggravation of his old injuries, but the Court found that such proof was unnecessary. See Brown, 410 F.3d at 175-76. In order to establish a "causal link," it was enough for the defendant to show that the old and the new injuries "were to the same location of the [plaintiff's] lumbar spine." Id. at 176. "The inquiry is simply whether the new injury is related to the old injury, irrespective of their root causes." Johnson v. Cenac Towing, Inc., 599 F. Supp. 2d 721, 728-29 (E.D. La. 2009); see also Jauch, 470 F.3d at 212-13 (finding requisite connection when new back injury was "virtually identical" to previous back injury); Noel v. Daybrook Fisheries, 213 F.3d 637, 2000 WL 554455, at *2 (5th Cir. 2000) (table) (per curium) (finding requisite connection when both injuries were to the "same disc"); Boatright v. Raymond Dugat Co., L.C., 2009 WL 138464, at *4 (S.D. Tex. 2009) (finding requisite connection when plaintiff's "prior and current injuries [were] both to his right hip"); Jenkins v. Aries Marine Corp., 590 F. Supp. 2d 807, 813 (E.D. La. 2008) ("To find the requisite 'connection,' courts have looked to whether the injuries

12

were identical or produced identical or substantially similar symptoms in the same part of the body.").

The plaintiff's medical records from 2013, in connection with his 2011 accident, indicate issues with his lumbar and cervical spine as well as levoscoliosis of the thoracic spine. These issues are consistent with his initial complaints of lower back and shoulder pain to his treating physician after his 2011 car accident. Over the five years the plaintiff was under treatment for the 2011 accident, his treating physician treated all areas of the back, including his thoracic spine. After his June 2016 accident while working for Cenac, Dr. Walker completed MRIs months later when the plaintiff began complaining of back pain; these MRIs were done in September 2016. The results of these MRIs indicate consistent lumbar spine issues from the plaintiff's 2013 MRI results. The 2016 MRI also indicated thoracic spine changes, namely, T9-10 loss of disc height that was associated with osteomyelitis. Dr. Walker testified that the osteomyelitis was more than likely not an occupational or trauma related condition; he could not offer any explanation as to what could have caused the osteomyelitis or when it developed.

The Court recognizes the challenge in parsing this Circuit's application of the third McCorpen defense factor. Cenac relies on the plaintiff's medical records to indicate that the same parts of his lumbar spine are affected months after his work-related

13

accident as were affected years before Cenac employed him. On this record, the Court cannot find a genuine issue of material fact as to whether there is a causal nexus between the concealed injury and the complained-of injury; both injuries were to the lumbar spine and the record does not support a finding that the new injuries to the thoracic spine arose during the time of employment. Accordingly, Cenac successfully employs the McCorpen defense.

II.   Motion for Leave to File Counterclaim

Under the Court's scheduling order, the deadline for filing amendments to pleadings, third-party actions, cross-actions and counterclaims was January 1, 2017. On February 24, 2017, Cenac filed this motion for leave to file a counterclaim against the plaintiff to seek an offset of potential damages the plaintiff receives for the maintenance and cure it paid "under protest."

The defendant acknowledges that the legal viability of a counterclaim to recover maintenance and cure payments is an undecided issue in the Fifth Circuit. See Boudreaux v. Transocean Deepwater, Inc., 721 F.3d 723 (5th Cir. 2013). The defendant cites Boudreaux v. Transocean Deepwater where Judge Clement, in a concurring opinion, opined that such a counterclaim could be permissible. See id. at 728-29 (Clement, J., concurring). It also calls the attention of the Court to other district court cases where this counterclaim has been allowed or suggested as a viable method of recovery. Sharpe v. Bertucci Contracting Co., No. 13-

14

6101, 2014 WL 4396086 (E.D. La. Sept. 5, 2014) ("This would not, however, impede Defendant's right to seek offset of the maintenance and cure payments against any potential damages awarded to Plaintiff, which right was clearly contemplated by the express language of the Boudreaux opinion."); Boudreaux v. Transocean Deepwater, Inc., No. 08-01686, 2010 WL 2671827, at *3-4 (E.D. La. June 29, 2010) (Lemelle, J.).

The issue presented in the defendant's counterclaim is undecided in this Circuit. However, the motion for leave to file the counterclaim will not decide the merits of the counterclaim itself. The plaintiff intentionally concealed a pre-existing medical condition that was material to Cenac's decision to hire him as a seaman and there is a causal connection between the injury complained of and the information withheld. For these reasons, Cenac was not obligated to pay maintenance and cure. See McCorpen, 396 F.2d at 548-51.

The plaintiff attempts to characterize the defendant's late filing of a motion for leave to file a counterclaim as an "additional bludgeon for Mr. Clark to have to deal with . . . ." However, it was the plaintiff's own act of concealing relevant medical history that is the root of this motion. There is "good cause" for allowing this late filing. The trial is over two months away; the "[p]laintiff will not suffer prejudice by allowing this purely legal counterclaim to be added." Boudreaux v. Transocean

Deepwater, Inc., No. 08-01686, 2010 WL 2671827, at *4 (E.D. La. June 29, 2010) (Lemelle, J.).

The Court reiterates that by granting this leave to file a counterclaim the Court is not ruling on the legal viability of the counterclaim itself.

### III.

Accordingly, IT IS ORDERED that Cenac's motions for partial summary judgment and leave to file a counterclaim are hereby GRANTED. The plaintiff's maintenance and cure claims and related punitive damages claims are hereby dismissed with prejudice. Cenac's counterclaim for an offset of maintenance and cure payments against any damages Clark recovers is to be filed in the record and will be tried with plaintiff's remaining Jones Act and unseaworthiness claims.

New Orleans, Louisiana, March 22, 2017

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

16