UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CENAC MARINE SERVICES, LLC             CIVIL ACTION

V.                                                  NO. 16-15029 &
                                                               16-15256
                                                                REF: 16-15256

JASON CLARK                                         SECTION "F"

<u>ORDER AND REASONS</u>

Before the Court is Cenac Marine Service's motion for partial summary judgment on Jason Clark's unseaworthiness claim, withheld safety bonus claim, and Jones Act claim relating to his osteomyelitis. For the following reasons, the motion is GRANTED.

**Background**

This is a consolidated case stemming from an injury to a seaman. The Court has issued an extensive Order and Reasons on this same matter, and for the sake of brevity assumes familiarity with the facts. The Court hereby adopts the summary of the facts in its March 22, 2017 Order and Reasons.

On June 30, 2016 Jason Clark, an employee of Cenac Marine Services, completed a Cenac incident report form. He indicated that he injured his back the day before, June 29, 2016, when he was moving a cross-over hose without the help of a deckhand. On the incident report, Clark answered "no" to questions about whether the injury was caused by any equipment on the vessel or by another person. Additionally, Cenac offered a safety reward bonus to

1

employees who had no incidents or accidents during the six-month period starting on January 1, 2016 until June 30, 2016. Clark's accident happened on June 29, 2016 and was reported on June 30, 2016. As a result of Clark's accident, he was diagnosed with a back strain. In the course of his treatment following the accident, his physicians also discovered that Clark had a spinal infection, osteomyelitis. Cenac paid for Clark's treatment under protest, reserving all rights to seek reimbursement.

The Court has previously granted summary judgment in favor of Cenac, holding that Cenac was not liable for maintenance and cure payments to Clark because of his intentional concealment of a back injury. Cenac now moves for summary judgment as to Clark's unseaworthiness claim, withheld safety bonus claim, and Jones Act negligence claim as it relates to Clark's osteomyelitis.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable

jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. <u>See</u> <u>id</u>. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. <u>Id</u>. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. <u>See</u> <u>Donaghey v. Ocean Drilling & Exploration Co.</u>, 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claim. <u>Id</u>. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. <u>Martin v. John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. <u>Anderson</u>, 477 U.S. at 255.

## II.

### A. *Unseaworthiness Claim*

Unseaworthiness is a "remedy separate from, independent of, and additional to other claims against the shipowner, whether created by statute or under general maritime law." Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 498 (1971). Importantly, "liability based upon unseaworthiness is wholly distinct from liability based upon negligence." Id. "The reason, of course, is that unseaworthiness is a condition, and how that condition came into being – whether by negligence or otherwise – is quite irrelevant to the owner's liability for personal injuries resulting from it." Id. "A vessel's condition of unseaworthiness might arise from any number of circumstances." Id. at 499. "Her gear might be defective, her appurtenances in disrepair, her crew unfit." Id. However, "[t]o hold that [an] individual act of negligence rendered the ship unseaworthy would be to subvert the fundamental distinction between unseaworthiness and negligence." Id. at 500.

Cenac contends that there was no condition on board the M/V GENIE CENAC, where Clark worked at the time of the alleged incident, or with any of its appurtenances or its crew. Additionally, Cenac points to Clark's deposition which provided:

> Q: Is there anything that your fellow workers did aboard the Genie tug, the GENIE CENAC, did any of them do anything to cause your injury?
>
> A: No.
>
> …

> Q: Is there any equipment aboard any of the Cenac vessels that, in your opinion, caused or contributed to your event?
>
> A: No.

Moreover, in the accident report Clark filled out, he stated that the accident was not caused by unfit or unreasonable equipment and that the accident was not anyone's fault. Thus, Clark reaffirmed his account of the accident during his deposition.

However, for the first time, Clark submits a newly-prepared self-serving affidavit in hopes to defeat summary judgment on his unseaworthiness claim. In his affidavit, Clark states that "the vessel was unseaworthy in that it did not have a competent crew having hired Mr. Graythern who takes a lot of breaks, tends to smoke in the engine room, never gave me help." Further, Clark now urges that:

> If I said in my deposition that I didn't know of any negligence or unseaworthiness on the boat, it was because I'm not a lawyer and since then I have been advised that any negligence however slight gives rise to liability.

This hypocritical attempt to defeat summary judgment must fail.

During his deposition, it was identified that Clark was not an attorney and, therefore, he was vetted at length to identify any person or equipment that caused or contributed to his accident. Additionally, at the time of his accident he denied the same in his accident report, which was consistent with his deposition

5

testimony. He now, to back away from his original candor, changes his story. He attempts to blame a deckhand, Stephen Graythern. However, Clark previously testified that he *could have waited* until another deckhand was available to help, but he instead chose to move the cross-over hose alone without asking for, or seeking any, assistance. Therefore, these new attempts to blame the deckhand are irrelevant, as are the whereabouts of Mr. Graythern at the time of the accident. The Court cannot find that a crewmember was incompetent, rendering a vessel unseaworthy, when that crewmember was indisputably not afforded the opportunity to assist.

The type of affidavit Clark submits has routinely been recognized as a baseless attempt to create a genuine issue of material fact; the Fifth Circuit routinely rejects such attempts. See BMG Music v. Martinez, 74 F.3d 87, 91 (5th Cir. 2001) (finding that a party's self-serving affidavit is insufficient to overcome a motion for summary judgment). Accordingly, Clark does not defeat Cenac's motion for summary judgment as to his unseaworthiness claim; the record is silent on evidence to suggest Clark has any merit in establishing that the vessel, including her appurtenances and crew, were unfit.

*B. Withheld Safety Bonus Claim[1]*

---

[1] In the plaintiff's complaint against Cenac, this claim is addressed under the "Jones Act Negligence and Unseaworthiness" combined causes of action. Because Cenac addresses it separately, the Court does so also for the sake of clarity.

Cenac offered its employees a safety bonus if the employee had no accident reports within a certain period. The period for the disputed bonus began on January 1, 2016 and ended June 30, 2016. The underlying accident that is the cause of the lawsuit happened on June 29, 2016 and was reported to Cenac the next day, June 30, 2016. Therefore, Cenac argues that Clark's claim that Cenac wrongfully withheld his safety is meritless.

Clark admitted in his deposition that the accident which is the basis of the lawsuit qualifies as an "accident" which would preclude the safety bonus eligibility. It is undisputed that the accident on June 29, 2016 occurred before the end of the bonus' six-month period, which ended on June 30, 2016.

In response, Clark presents misguided arguments. Because it is unclear exactly what basis Clark presents that the bonus was wrongfully withheld, the Court interprets the argument with common sense. The Court believes Clark attempts to defend his claim for the safety bonus by arguing that because Clark was employed by Cenac for the duration of the six-month bonus period, he must be entitled to the bonus. However, this argument blatantly misinterprets that guidelines for receipt of the safety bonus.[2] As

---

[2] In fact, Clark's opposition states that Cenac "fails to consider . . . that Clark was 'working' during the period following his injury . . . . Whether he was accident free for a 6 month window is obviously a matter of semantics, disputed facts." The Court admonishes counsel for submitting such a groundless, specious

accepted, the record indicates that Clark's accident happened before the end of the six-month period; the type of accident Clark reported was of the type to preclude receipt of the bonus; accordingly, Clark admitted in his deposition that he was not entitled to the bonus. Clark's attempt to suggest that because he was *employed* during the six-month period he must be entitled to the bonus fails on its face. By the terms of the bonus promotion, Clark had an accident report which precluded his eligibility. Accordingly, Cenac did not wrongfully withhold a safety bonus, because Clark was ineligible by its clear terms for the bonus once his accident occurred.

### C. *Jones Act Negligence Claim*

"The Jones Act provides an action in negligence for the death or injury of a seaman." <u>Miles v. Apex Marine Corp.</u>, 498 U.S. 19, 29 (1990). In the Jones Act, Congress provided that "[l]aws of the United States regulating recovery for personal injury to [a seaman] apply." 46 U.S.C. § 30104. Under the Jones Act, an employer owes its employees a duty of reasonable care. <u>Verrett v. McDonough Marine Serv.</u>, 705 F.2d 1437, 1441 (5th Cir. 1983). The Jones Act simultaneously obligates the seaman to act with ordinary care under the circumstances. <u>Gautreaux v. Scurlock Marine, Inc.</u>, 10 F.3d 331, 339 (5th Cir. 1997). The seaman must act with the care, skill,

---

argument to the Court and to opposing counsel. <u>See</u> 28 U.S.C. § 1927.

8

and ability expected of a reasonable seaman in like circumstances. Id. Thus, comparative negligence applies under the Jones Act, "barring an injured party from recovering for the damages sustained as a result of his own fault." Miles v. Melrose, 882 F.2d 976, 984 (5th Cir. 1989) aff'd sub nom. Apex Marine, 498 U.S. 19.

Cenac contends that Clark's Jones Act claim, as it pertains to his osteomyelitis, must fail because his osteomyelitis was caused by his own negligence, not negligence attributable to Cenac. As support, Cenac first points to Dr. Walker's testimony that Clark's condition did not arise in the service of the vessel and that, within a reasonable degree of medical certainty, his osteomyelitis was not occupationally or traumatically related. Next, Dr. Murthy repeatedly refused to give an opinion regarding the causation of the osteomyelitis because she was unable to do so within a reasonable degree of medical certainty. Dr. Murthy did testify that that there was a "remote" possibility that Clark had a bone infection many years ago which might have been reactivated when he sustained a blunt trauma to the site. Interestingly, Clark told Dr. Murthy that a beam fell on his back; however, Clark did not sustain a blunt trauma to his back *while working for Cenac* and he never testified as to a beam falling on his back. Clark did not tell Dr. Murthy that he was dragging a hose at the time of the alleged incident; and as a result, he was diagnosed with sprain to his back from this incident. Dr. Murthy testified that she is not

aware of a strain causing osteomyelitis, as Clark alleges in this lawsuit.[3]

Instead, Cenac submits that Clark's past drug use and tattoo exposure more likely than not caused the spinal osteomyelitis. Dr. Lutz testified that Clark tested positive for Hepatitis C between December 2015 and September 2016. Dr. Lutz contends this condition is consistent with Clark's admitted history of intravenous drug use and exposure to tattooing needles. Dr. Murthy confirmed that Clark tested positive for Hepatitis C, and that that condition can be transmitted into the body through illicit intravenous drug use. Ultimately, Dr. Murthy opined that the Hepatitis C and intravenous drug use present a reasonable explanation for Clark's spinal osteomyelitis. Finally, Dr. Murthy testified that "dirty" tattoo needles could also lead to contracting Hepatitis C and eventually osteomyelitis; Clark has 17 tattoos. Therefore, Cenac submits that Clark's osteomyelitis was more likely than not caused by illicit intravenous drug use or tattoo needles rather than a sprain incurred during work on Cenac's vessel.

---

[3] Cenac presents that questions of fact still exist as to whether Clark may have aggravated some concealed pre-existing condition when moving the cross-hose during the June 29, 2016 incident. Therefore, Cenac submits that whether Clark can collect damages for Dr. Walker's post-incident diagnosis of a back sprain and the related three treatment sessions, for 13 days before being cleared fit for duty, remains an issue for trial.

Clark responds, again in his self-serving affidavit, that the medical evidence reveals that Clark had "cyst" that "obviously developed" during his employment with Cenac. The cyst, Clark argues, "bust" from the strain of dragging a heavy cross-over hose during the work Clark performed on June 29, 2016. Thus, Clark speculates that it is "not at all hard to conceive that strain in the vicinity of a cyst might cause it to leak (or bust) spreading infection in the vicinity." Therefore, Clark says that he is "convinced" a cyst on his spine bust "because of the strain of pulling on the heavy hose."

Clark also relies on a medical report from Dr. Chambers which finds that Clark's signs and symptoms are causally related to the accident of June 30, 2016 with a reasonable degree of medical certainty. Clark, however, speciously presents the report from Dr. Chambers. He fails to recognize that Dr. Chambers' report was prepared *before* Clark was ever diagnosed with spinal osteomyelitis. Therefore, it is impossible that Dr. Chambers concluded that the spinal osteomyelitis was caused by his work-related accident. As stated, Cenac only presents the Jones Act claim relating to Clark's osteomyelitis in this motion for summary judgment. Accordingly, Clark's reliance on Dr. Chambers' findings are irrelevant and fail to create a genuine issue of material fact.

Clark's self-serving affidavit similarly does not prevent the Court from finding in favor of Cenac on Clark's Jones Act

negligence claim as it pertains to his osteomyelitis. Clark merely stating his hopeful view that he is "convinced" the cyst bust remains in direct contrast to medical experts' opinions. Clark makes this statement in an attempt to create an issue of fact; the attempt fails. Additionally, Clark's new position that he blames his deckhand and Cenac's hiring for the negligence causing his back injury is misplaced; as repeatedly mentioned, Cenac only seeks summary judgment as to the osteomyelitis condition, not the back sprain. Even so, Clark's new affidavit, prepared in response to Cenac's motion for summary judgment, does not present the type of evidence required to defeat a motion for summary judgment. See Celotex Corp., 477 U.S. 317, 324 (1986) (requiring a "nonmoving party to go beyond the pleadings [and his] own affidavits" to designate "specific facts showing that there is a genuine issue for trial"). Accordingly, the Court finds no genuine issue of material fact as to Clark's Jones Act claim, as it pertains to his osteomyelitis.

III.

Accordingly, IT IS ORDERED: that Cenac's motion for partial summary judgment is GRANTED. Clark's claims for (1) unseaworthiness, (2) withheld safety bonus, and (3) Jones Act negligence regarding his osteomyelitis are hereby DISMISSED with prejudice.

New Orleans, Louisiana, April 27, 2017

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE